UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GINA BELLIDO,

                            Plaintiff,                    **COMPLAINT**

      -against-

THE NEW YORK CITY FIRE DEPARTMENT and      **PLAINTIFF DEMANDS**
ROBERTO COLON *individually,*                         **A TRIAL BY JURY**

                            Defendants.
------------------------------------------------------------X

Plaintiff GINA BELLIDO ("Plaintiff"), by her attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the New York State Human Rights Law, 15 N.Y. Exec. Law §§ 290 *et seq*. ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et. seq*. ("NYCHRL") and seeks damages to redress the injuries she been suffering as a result of being **discriminated against, sexually harassed, and subjected to discriminatory harassment on the basis of her sex/gender (female) and retaliated against for engaging in a protected activity.**

## PARTIES

2. Plaintiff is a female who resides in Westchester County, New York.

3. Upon information and belief, at all relevant times, Defendant ROBERTO COLON ("COLON") was and is an employee of Defendant THE NEW YORK CITY FIRE DEPARTMENT ("FDNY").

4. At all relevant times, Defendant COLON was and is an EMS Deputy Assistant Chief and

1

in that capacity was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Defendant COLON had the authority to affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

5. This Court has subject matter jurisdiction over Claimant's claims pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

6. This Court has supplemental jurisdiction over Claimant's claims under the NYSHRL and the NYCHRL pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of New York.

8. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 22, 2022, (b) receiving a Notice of Right to Sue from the EEOC on January 6, 2023, (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as "Exhibit A;" a copy of the transmittal letter to the NYCCHR et ano. is annexed hereto as "Exhibit B."

## MATERIAL FACTS

9. On or about July 1, 2008, Plaintiff began working for Defendant FDNY as an EMT in New York City. Plaintiff earns a salary of approximately $68,000 per year.

10. For approximately 12 years, Plaintiff served FDNY as an EMT out of Station 16 located at 15 West 136th Street, New York, NY in the Harlem neighborhood.

11. Plaintiff later worked as a dispatcher for FDNY from 2018-2019 based out of the 350 Marconi Street location in Bronx, NY.

12. In or around Fall 2019, Plaintiff changed roles and began working out of Station 4 located at 299 South St, New York, NY. Plaintiff's duties include scheduling Lieutenants, EMTs, and medics for the day's morning and evening shifts. Plaintiff is also trusted with driving specialty vehicles to the scene of fires.

13. At Station 4, Plaintiff's direct supervisors are Chief Charles Morgan ("Morgan") and Captain Mario Tompkins ("Tompkins").

14. Defendant COLON is a 2-Star Chief at Defendant FDNY, considered a Manager with the City of New York, and in his capacity supervises the Manhattan Division of FDNY. Upon information and belief, COLON and others of his rank can only be disciplined by the Commissioner.

15. Upon information and belief, COLON supervises Morgan and Tompkins.

16. In or around 2019, Plaintiff met COLON. From then through 2021, Plaintiff experienced sexually harassing comments and advances by COLON.

17. In 2019, COLON asked Plaintiff her shoe size and told her that her feet would look good in a pair of expensive heels. Plaintiff was confused and found the comment off-putting from a supervisor within the department.

18. In or around December 2019, COLON hugged Plaintiff before leaving for his vacation. Plaintiff felt extremely uncomfortable and helpless.

19. Often Plaintiff and her coworkers would eat lunch together. Several times, when lunch was over, Plaintiff would find that COLON stuck around in the lunch and kitchen area to be

alone with Plaintiff, making her uncomfortable. On other occasions, COLON would ask Plaintiff to sit next to him at the lunch table. Plaintiff felt embarrassed, but also felt a sense of pressure as COLON is above her in rank within the department and had the ability to affect her employment.

20. On another occasion, COLON called Plaintiff towards him while the two were working. Plaintiff obliged and asked what COLON needed. COLON motioned for Plaintiff to come closer and stated, "You're beautiful." Plaintiff was embarrassed and walked away from COLON.

21. In or around February 2020, COLON added Plaintiff on Facebook. Plaintiff accepted, but then feeling uncomfortable, blocked COLON's account days later. The next time Plaintiff saw COLON he asked Plaintiff why she "disappeared" on Facebook.

22. That same week, Plaintiff heard from a coworker that COLON had said that he was trying to send Plaintiff a message on Facebook. Plaintiff was uncomfortable that COLON would try to contact her outside of work.

23. In early March 2021, while on the job, COLON asked Plaintiff to accompany him to the bakery to get pastries for their coworkers. Plaintiff obliged, but later stated that she was confused why she was asked to pick the pastries up, as she had not expressed interest in getting pastries. COLON responded loudly to another EMT, "She just doesn't get it."

24. A short while later, COLON wrote his department-issued cell phone number on a piece of paper and handed it to Plaintiff.

25. Around that same time, in March 2021, COLON approached Plaintiff from behind and put his hands on her shoulders, stating in sum and substance: "I know I make you nervous." Plaintiff responded, in sum and substance: "No, you make me uncomfortable."

26. On or about March 27, 2021, Plaintiff was working when she received a phone call from

COLON. COLON asked Plaintiff to send someone's phone number to his personal cell phone. At the time, Plaintiff did not have a department-issued cell phone, so she was forced to send COLON the information from her personal cell phone, as COLON is the supervisor for all of Manhattan, both of her bosses' boss, and has supervisory authority over Plaintiff, despite being uncomfortable doing so. Plaintiff began to feel that this was simply a way for COLON to get her personal cell phone number and start a text message exchange with Plaintiff.

27. After this, Plaintiff would often receive messages from COLON attempting to start conversation with her.

28. COLON would often call Plaintiff into his office for trivial reasons, in Plaintiff's view creating excuses to see her and talk to her.

29. On or about April 1, 2021, COLON approached Plaintiff while she was seated at her work station. COLON grabbed Plaintiff's wrists. Plaintiff pulled her hands away. COLON again grabbed her wrists and stated in sum and substance: "You did your nails, I'm surprised." Plaintiff was mortified and fearful that COLON was emboldened enough to continue to touch her when she had clearly refused his advances several times.

30. In or around September 2021, COLON returned from vacation and was speaking about it to another one of Plaintiff's coworkers who asked if COLON had gotten a massage on vacation. COLON stated that he was "waiting for [Plaintiff] to give me a massage." Plaintiff was mortified by COLON's statement and felt extremely uncomfortable.

31. On another occasion, COLON approached Plaintiff, looked her up and down, and stated in sum and substance: "Look at you. Looking all slim and sexy. Sexy, sexy ass." Two of Plaintiff's coworkers overheard this statement and verbally expressed their disgust.

32. On another occasion, COLON stated to Plaintiff in sum and substance: "All that meat and

I am starving," referring to Plaintiff's body.

33. On or about October 15, 2021, Plaintiff was working when she came to learn that COLON was in the Manhattan office that day. Plaintiff became extremely uncomfortable and left her post. She went to speak to her Lieutenant in an effort to avoid running into COLON.

34. In her absence, COLON's aide Lori Valtutto ("Valtutto") came into the office and asked where Plaintiff was. Other coworkers informed Valtutto that Plaintiff had gone to take a break and Valtutto stated in sum and substance, "Oh she's on her bullshit again? You can tell her to come out from hiding in the bathroom, we are going to be here a while."

35. Plaintiff's coworkers informed her of Valtutto's statements, as well as Valtutto's additional questions about Plaintiff's complaints of sexual harassment against COLON. Plaintiff was mortified that she was being ridiculed to her coworkers after reporting unlawful sexual harassment.

36. That same day, Plaintiff complained about the repeated, pervasive sexual harassment by COLON to Marie Villani, Division Chief of Division 6 in Manhattan.

37. Thereafter, Plaintiff's complaints were investigated by Defendant FDNY and approximately three months later, Plaintiff was informed that based on the FDNY's investigation: "There is sufficient credible and corroborating evidence that EMS Deputy Assistant Chief Roberto Colon sexually harassed you by making unwelcomed comments of a sexual nature and engaging in unwelcomed touching in the workplace."

38. Further, the correspondence from FDNY indicated, "As a result of these findings, the EEO Office has recommended, and the Commissioner has approved, that this matter be referred to the Bureau of Investigations and Trials ("BITs") for appropriate disciplinary action. Please be advised that the FDNY anti-retaliation policy remains in effect after the conclusion of this investigation. No employee may retaliate against or harass a person for

opposing discrimination, filing an EEO complaint, or cooperating in the investigation of this EEO complaint, even after the EEO Office's findings and conclusion."

39. Plaintiff remains employed with Defendant FDNY.

40. Since the above determination, COLON has subjected Plaintiff to increased scrutiny, including reporting to Plaintiff's supervisor that certain department information that Plaintiff typically sends out as a regular course of business at approximately 6:30 AM was late. COLON requested the information be delivered by Plaintiff "earlier." Plaintiff's tour of duty with FDNY begins at 5:30 AM. Other units were sending the same information between 8:30 and 10:00 AM. Plaintiff was upset that she and her partners were subjected to enhanced scrutiny by COLON because of Plaintiff's complaint of sexual harassment and subsequent investigation.

41. Further, Plaintiff is aware that COLON occasionally visits the office location where Plaintiff works, despite his office being in another borough.

42. The above are just some of the instances of sexual harassment that Plaintiff experienced at the hands of COLON and FDNY.

43. As of January 2023, Plaintiff continues to be employed with Defendant FDNY.

44. Upon information and belief, COLON has not been disciplined to date.

45. Defendants engaged in unlawful employment practices by discriminating against Plaintiff because of her **sex/gender (female).**

46. Despite Plaintiff's complaints, Defendant FDNY has failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment.

47. Defendants knew that Plaintiff was being subjected to a hostile work environment.

48. Defendants condoned, supported, ratified, and furthered the discriminatory and hostile conduct.

49. Defendants willingly ignored their obligations to prevent discrimination in the workplace - to the detriment of Plaintiff.

50. Despite Defendants' clear knowledge of the discriminatory actions against Plaintiff, Defendants did not make any effort to remedy the situation.

51. Throughout her employment, Plaintiff felt humiliated, stressed, angered, insulted, fearful, and frustrated.

52. Defendants allowed an environment to exist that is permeated with sexual harassment, gender-based discrimination, and other unlawful acts against Plaintiff.

53. Defendants' actions and conduct were intentional, grossly negligent, and intended to harm Plaintiff.

54. As a result, Plaintiff was unlawfully humiliated, degraded and belittled, suffered violations of her rights, suffered physical, mental, and emotional distress, experienced inconvenience, pain and suffering, humiliation, stress, anxiety, embarrassment and other emotional distress.

55. Plaintiff also suffered emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

56. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

57. Punitive damages are warranted against all Defendants.

## AS A FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII

58. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

59. This claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of Corporate Defendant.

60. Plaintiff complains of Corporate Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's **sex/gender**.

61. Corporate Defendant engaged in unlawful employment practices by discriminating against Plaintiff because of her **sex/gender (female)**.

## AS A SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

63. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

64. Corporate Defendant engaged in unlawful employment practice prohibited by Title VII by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Corporate Defendant.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

66. Executive Law § 296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**,

9

      disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

67. Defendants engaged in unlawful discriminatory practices by discriminating against Plaintiff because of her **sex/gender (female)**.

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

69. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

70. Defendants engaged in unlawful discriminatory practices by discriminating against Plaintiff because of her opposition to the unlawful employment practices of the Defendants.

## AS A FIFTH CAUSE OF ACTION
## AIDING AND ABETTING UNDER THE NYSHRL
## (Against Individual Defendant)

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

72. New York State Executive Law § 296(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so.

73. Defendant BRACCIA violated the section cited herein as set forth above.

## AS A SIXTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

75. New York City Administrative Code §8-107(1) provides that:

    > It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

76. Defendants engaged in unlawful discriminatory practices by discriminating against Plaintiff because of her **sex/gender (female)**.

## AS A SEVENTH CAUSE OF ACTION
### RETALIATION UNDER THE NYCHRL

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

78. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

79. Defendants engaged in unlawful discriminatory practices in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

## AS AN EIGHTH CAUSE OF ACTION
### AIDING AND ABETTING UNDER THE NYCHRL
### (Against Individual Defendant)

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

81. The New York City Administrative Code §8-107(6) provides that it shall be unlawful

11

discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

82. Defendant BRACCIA engaged in unlawful discriminatory practices in violation of the New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## JURY DEMAND

83. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the NYSHRL, and the NYCHRL in that Defendants discriminated against Plaintiff on the basis of her gender/sex.

B. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
January 19, 2023

                              **PHILLIPS & ASSOCIATES,**
                              **ATTORNEYS AT LAW, PLLC**

By: _____
Brittany A. Stevens, Esq.
*Attorney for Plaintiff*
45 Broadway, Suite 430

12

New York, New York 10006
T: (212) 248-7431
F: (212) 901-2107
bstevens@tpglaws.com